# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DARRIN SCOTT ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, *in her capacity as Acting Commissioner of the Social Security Administration*,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:13-CV-108<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Darrin Scott Anderson filed this action asking this Court[1] to reverse or remand the final agency decision denying him Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see* 42 U.S.C. §§ 1381–1383f (2010). The Administrative Law Judge ("ALJ") determined that Mr. Anderson did not qualify as disabled within the meaning of the Social Security Act. (Admin. R. Doc. 28, certified copy tr. of R. of admin. proceedings: Darrin Scott Anderson (hereinafter "Tr. __").) Based on the Court's careful consideration of the record, the parties' memoranda, and relevant legal authorities, the Court REMANDS the Commissioner's decision to the agency for further proceedings to permit further development of the record.[2]

---

[1] On November 27, 2013, the parties consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 28.)

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

## PROCEDURAL HISTORY

Mr. Anderson filed for SSI on December 8, 2009 alleging an onset date of disability of October 19, 2002, which he later amended to December 8, 2009. (Tr. 28.) The Regional Commissioner denied Mr. Anderson's claims on April 6, 2010, and upon reconsideration denied them again on July 19, 2010. (*Id.*) At Mr. Anderson's request, a hearing took place before an Administrative Law Judge ("ALJ") on September 21, 2011. (Tr. 28, 45–75.) On October 19, 2011, the ALJ issued a decision (the "Decision") denying Mr. Anderson's claims. (Tr. 28–38.) On December 20, 2012 the Appeals Council denied Mr. Anderson's request for review, (tr. 1–6), making the ALJ's Decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 1383(c)(3). *See* 20 C.F.R. § 416.1481.

## FACTUAL BACKGROUND

Because the ALJ's decision and the parties' briefs provide well-detailed facts, the Court provides only a brief overview of the relevant facts.

### Multi Disc Disease

At the time of the hearing, Mr. Anderson, forty-eight years old, (tr. 48), asserted disability on the basis of degenerative disc disease of the cervical and lumbar spine. (Tr. 178.)

Mr. Anderson's neck problems began when he suffered an industrial injury in October 2002, from a stabilizer bar breaking loose and hitting him in the nose. (Tr. 51, 226–233.) As a result of the accident, Mr. Anderson had nose surgery in November 2002, (tr. 226–28), and neck surgery in June 2003, (tr. 272). During the neck surgery, the surgeon installed a titanium plate and three pairs of screws in Mr. Anderson's neck to repair herniated discs at C5-6 and C6-7 and neural foraminal narrowing. (Tr. 51, 270–74.)

From February 25, 2004 until August 1, 2005, Mr. Anderson received outpatient rehabilitation care from Dr. Fotheringham, M.D., after reporting the surgery did not ameliorate his neck pain. (Tr. 292–305.) In 2005, Dr. Fotheringham took x-rays of Mr. Anderson's cervical spine and noted "mild degenerative changes." (Tr. 293.) Mr. Anderson began to experience numbness in his left thumb at this time, which the doctor thought might result from C6 radiculopathy. (*Id.*)

On July 7, 2007, Mr. Anderson sought treatment from the Bay Medical emergency room in Panama City, Florida for a back spasm in his low back. (Tr. 279–90.) Mr. Anderson underwent a CT scan. (Tr. 285.) Dr. Nichols, M.D., reviewed the results and determined that Mr. Anderson had "multi disk disease" with evidence of old fractures at L2–3, L3–4, L4–5, and L5–S1. (*Id.*)

From January 11, 2010 until June 1, 2010 Mr. Anderson received prescriptions for pain management from Health Clinics of Utah. (Tr. 466–69, 490–96.) His doctor noted that he walked with a limp that appeared to have worsened. (*Id.*)

On March 29, 2010, Dr. Katherine Farrell, M.D., evaluated Mr. Anderson's case for the SSA. (Tr. 472–80.) Mr. Anderson reported numbness in both arms, and Dr. Farrell observed that he walked with a limp. (Tr. 472.)

In June, Mr. Anderson discontinued medication due to an inability to pay his doctor.[3] (Tr. 490.) During the time that he could not afford to see a doctor to obtain pain medication, Mr. Anderson obtained pain medications not prescribed to him. (Tr. 53–54, 65–66.) When Mr.

---

[3] In the record Mr. Anderson last obtained pain medication on June 2010. (Tr. 490.) During the hearing neither Mr. Anderson nor the ALJ mention of the year Mr. Anderson stopped receiving prescription pain medication. (Tr. 65–66.) However, the ALJ's decision states that Mr. Anderson stopped receiving pain medication in June 2011. (Tr. 32.) This discrepancy in year may reflect a typographical error or a misunderstanding. Upon remand, the ALJ should further develop the record and clarify this fact.

Anderson returned to his doctor, the doctor denied him treatment because Mr. Anderson had medications in his system that his doctor had not prescribed. (Tr. 53–54.)  Mr. Anderson has not had prescribed pain medication since.  (*Id.*)

On July 7, 2010 Dr. Richard Ingebretsen evaluated Mr. Anderson at the Salt Lake Regional Medical Center to prepare a report on Mr. Anderson's "current functional level" for the SSA.  (Tr. 498.)  Dr. Ingebretsen reported a marked decrease in the range of motion of Mr. Anderson's spine due to pain, a "distinct painful muscle spasm to the right" of Mr. Anderson's lower lumbar spine, significantly reduced range of spinal motion, and a positive straight leg test on the right.  (Tr. 500.)  At the time of this examination Mr. Anderson reported numbness in his arms and fingers.  (Tr. 498.)  Mr. Anderson has no way to pay for x-rays of his neck.  (Tr. 64.)

### **Job History**

Mr. Anderson worked primarily as a carpenter prior to 1998.  (Tr. 189.)  He built residential homes as well as pre-fabricated trailers and modular homes.  (Tr. 50, 189.)  In 2001, Mr. Anderson obtained work as a laborer and machine operator with Eugene Morgan and Son Excavating.  (Tr. 189.)  At the hearing, Mr. Anderson testified that his employment ended due to the accident with the stabilizer bar, which precipitated his surgeries and health problems.  (Tr. 51.)

At the hearing, the vocational expert, Mr. Cowar, testified that none of the skills Mr. Anderson had as a carpenter or heavy equipment operator would transfer to jobs at his new functional level.  (*See* tr. 69.)

### **STANDARD OF REVIEW**

42 U.S.C. § 1383(c)(3) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA").  The Court reviews the

Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[4] The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of the evidence," *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically, but "examine the

---

[4] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## **ANALYSIS**

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

The ALJ evaluated Mr. Anderson's claim through step five, making the following findings of fact and conclusions of law:

1. "[Mr. Anderson] has not engaged in substantial gainful activity since December 8, 2009, the application date (20 CFR 416.971 *et seq.*)" (Tr. 30.)
2. "[Mr. Anderson] has the following severe impairments: degenerative disc disease of the cervical and lumbar spine (20 CFR 416.920(c))." (*Id.*)
3. "[Mr. Anderson] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920 (d), 416.925 and 416.926)." (*Id.*)
4. "After careful consideration of the entire record . . . since the amended alleged onset date [Mr. Anderson] has had the residual functional capacity to perform the full range of unskilled sedentary to light work as defined in 20 CFR 416.967(b) except that such work could not require:

   lifting more than 8.5-10 pounds at a time, on more than a "less than occasional" basis;

lifting and carrying lighter articles weighing more than 3-5 pounds, on more than an "occasional" basis (where "occasional" means from very little up to 1/3 of the day);

standing or walking more than 30 minutes at one time nor more than six total hours in an 8 hour work day;

sitting more than 30 minutes at one time, nor more than six total hours in an 8 hour work day;

Note: due to the need to change postures every 30 minutes, [Mr. Anderson] requires a job that allows for work to be performed sitting or on the feet walking or standing;

Bending, twisting or squatting on more than a "less than occasional" basis;

Stooping on more than an "occasional" basis, which means from very little up to 1/3 of the day;

Work on the floor (e.g. kneeling, crawling or crouching) on more than a "less than occasional" basis;

Climbing or descending flights of stairs (but a few stair steps up or down not precluded);

Overhead lifting or overhead reaching on more than a "less than occasional" basis;

More than frequent Reaching, Handling, and Fingering but no Feeling;

More than occasional gripping and grasping, pushing and pulling;

Sustained neck flexion or extension and no significant twisting of the neck or back/torso." (Tr. 31–32.)

5. "[Mr. Anderson] is unable to perform any past relevant work (20 CFR 416.965)." (Tr. 35.)
6. "[Mr. Anderson] was born on September 18, 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963)." (Tr. 36.)
7. "[Mr. Anderson] has a limited education and is able to communicate in English (20 CFR 416.964)." (*Id.*)
8. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Mr. Anderson] is "not disabled," whether or not [he] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." (*Id.*)

9. "Considering [Mr. Anderson]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mr. Anderson] can perform (20 CFR 416.969 and 416.969(a))." (*Id.*)
10. [Mr. Anderson] has not been under a disability, as defined in the Social Security Act, since December 8, 2009, the date the application was filed (20 CFR 416.920(g))." (Tr. 37.)

In short, the ALJ concluded Mr. Anderson did not possess an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart p, Appendix 1, and that Mr. Anderson is capable of making an adjustment to other work that exists in significant numbers in the national economy. (Tr. 37.) In making this ruling, the ALJ relied on the testimony of the vocational expert, who made certain reductions from the numbers found in the *Dictionary of Occupational Titles* to accommodate the limitations of Mr. Anderson's residual functional capacity. (Tr. 37.)

In support of his claim this Court should reverse the Commissioner's decision, Mr. Anderson argues the ALJ erred: (1) by improperly concluding that Mr. Anderson's condition does not meet or equal a listing; (2) by improperly rejecting Mr. Anderson's subjective complaints; and (3) by failing to meet his step five burden to identify jobs existing in significant numbers that Mr. Anderson can perform. (Pl's Opening Br. 9, 11, 14, ECF No. 14.)

### I. Listing 1.04(A)

Mr. Anderson argues the ALJ erred by determining that his impairments did not meet or equal any listing. (Pl's Opening Br. 9, ECF No. 14.) Mr. Anderson contends that the ALJ failed to discuss the evidence in the record showing Mr. Anderson met Listing 1.04A, and at the least "should have called a medical expert to provide testimony." (*Id.* at 11.) Because the ALJ failed to develop the record adequately, and did not request additional medical information to support his conclusions, the Court agrees with Mr. Anderson.

At Step Three of determination, the ALJ must decide whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant meets or medically equals a listing then the ALJ must find the claimant disabled. *Id.* Mr. Anderson contends that his condition meets or equals Listing 1.04 Disorders of the Spine. (Pl's Opening Br. 9, ECF No. 14.) Listing 1.04 reads as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Appendix 1 to Subpart P. The ALJ ruled that Mr. Anderson did not meet listing 1.04. (Tr. 31.) The ALJ wrote,

> [s]pecifically, with respect to listing 1.04, *disorders of the spine*, there is lacking evidence that the claimant meets all of the requisite type and severity of symptoms, including evidence of a nerve root or the spinal cord compression with appropriate distribution of pain, limitations of motion of the spine, motor loss consisting of atrophy with associated muscle weakness or muscle weakness alone accompanied by loss of sensation of reflexes and positive straight leg raise test from low back problems.

(*Id.*) (emphasis in original). In reaching this conclusion, the ALJ stated he relied on the state agency medical consultants. (Tr. 30.) However, the state agency medical consultant, Dr. Ingebretsen, found that Mr. Anderson walked "leaning forward" and moved carefully; appeared uncomfortable; exhibited back pain on the heel walk, toe walk, and tandem walk; could not hop; was able to squat to only 40% of normal; had a painful muscle spasm to the right of his lower lumbar spine; had a significantly decreased range of motion for his spine—only thirty out of one hundred and thirty; and Mr. Anderson had a positive straight leg test on the right side. (Tr. 498–500.) These medical findings would seem to meet the description of Listing 1.04(A), in particular, the marked decrease in spinal range of motion, painful muscle spasm, and positive straight leg test. (20 C.F.R. Part 404, Appendix 1 to Subpart P.) Additionally, Dr. Farrell, another state agency medical consultant, found in March 2010, based on images from 2007 that Mr. Anderson had cervical injury and severe degenerative changes but did not meet a listing.[5] (Tr. 472.)

The Court finds that the ALJ must develop the record further before declaring Mr. Anderson cannot meet Listing 1.04(A). The record contains x-rays of Mr. Anderson's cervical spine from 2005, which show "mild degenerative changes" at C4-5, "some type of C6 radiculopathy." (Tr. 293.) Dr. Fotheringham, who examined these x-rays, suspected a problem with Mr. Anderson's neck. (*Id.*) Furthermore, in 2007, Mr. Anderson had a CT scan that showed multidisc disease with old fractures at L2 through S1 with some narrowing and mild encroachment on the neural foramina. (Tr. 285–86; 289–90.) In 2010, Mr. Anderson had to shift positions, rise in pain, and move to protect his back to address his pain. (Tr. 500.) Mr. Anderson has limited motion of his spine as evidenced by a score of 30/130 given by Dr.

---

[5] If on remand the ALJ finds the objective medical evidence ambiguous, the testimony of a medical expert at the hearing to assist with interpretation of that evidence may prove helpful.

-11-

Ingebretsen. (Id.) Mr. Anderson has muscle weakness, muscle spasms, and walks with a limp. (*See* tr. 490-92, 500.) Mr. Anderson has a positive straight leg raise test and complains of lower back pain. (Tr. 500.) Moreover, throughout 2010 Mr. Anderson complained of additional pain and numbness. (Tr. 467–69, 472.) At the hearing on September 21, 2011, Mr. Anderson testified that he experienced problems with his leg, including numbness from his knee to his foot. (Tr. 55.) Mr. Anderson also complained that his neck bothered him and expressed concerns that the hardware in his neck had come loose. (*Id.*)

Social Security hearings are "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11(2000). The ALJ has an obligation to develop the record adequately *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). The ALJ has a duty to develop the record "fully and fairly" as to material medical issues. *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993) (internal citations and quotations omitted). The ALJ also has the duty to develop the record for impairments that come to light during the hearing. *See* 20 C.F.R. § 416.917; *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996); *Baker v. Bowen*, 886 F.2d 289, 291–92 (10th Cir. 1989).[6]

During the hearing Mr. Anderson complained repeatedly about problems with his neck, yet the ALJ made no inquiries about this issue and did not develop the record in this direction. (Tr. 55–58.) In *Baker v. Bowen*, the Tenth Circuit remanded a case to an ALJ for failure to develop the record adequately. 886 F.2d 289, 292 (10th Cir. 1989). In that case, the ALJ did not acquire X-rays to determine if a claimant had developed arthritis. *Id.* at 291–92. Here, Mr.

---

[6] The Court recognizes that *Baker* differs from the instant case, as the party in that case appeared pro se, whereas Mr. Anderson had the benefit of an attorney. The ALJ has a heightened duty to develop the record in cases where a party lacks assistance of counsel. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ's duty continues to exist even where a party has representation. *Henrie*, 13 F.3d at 361.

Anderson has had difficulty obtaining medical treatment because of financial limitations. (Tr. 64, 66, 493–95.) Mr. Anderson alleges more and different symptoms and pain since 2007 the year of his last CT, X-ray, or MRI. Indeed, the alleged onset date is December 8, 2009. The ALJ did not develop the record on the symptoms and pain suffered following the alleged onset date adequately. Without acquiring current images, the ALJ could not determine accurately whether Mr. Anderson met Listing 1.04 after December 8, 2009.

Therefore, this Court finds that the ALJ failed to develop the record fully, and remands this case for further proceedings.

## II. Subjective Complaints

The ALJ found that Mr. Anderson's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms but the statements concerning the intensity, duration and limiting effects of [Mr. Anderson's] symptoms [were] not fully credible and [were] somewhat out of proportion to the medical record and all of the other evidence." (Tr. 34.) Credibility determinations fall within "the province of the finder of fact," and Courts will not overturn those determinations when "supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal citations omitted). However, credibility determinations should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotations omitted).

The Tenth Circuit has provided factors for consideration to help guide making credibility determinations about subjective pain. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (internal citations omitted). The ALJ need not consider every factor in this list, but the ALJ should look generally to factors like these when making a credibility determination. *Id.* at 1490.

In the instant case, the ALJ states that Mr. Anderson's daily activities undermine his allegations of disability. (Tr. 34.) However, the ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disability pain." *Thompson*, 987 F.2d at 1490. Mr. Anderson performs minimal daily activities—including sitting around watching television and folding clothing, but he cannot tie his own shoes. (Tr. 34.)

The ALJ also rejects Mr. Anderson's claims because Mr. Anderson has not taken regularly prescribed pain medication and would likely have less pain if he took prescription pain killers. (Tr. 34.) Before an ALJ finds a claimant's "failure to pursue treatment or take medication" supports a determination that a claimant lacks credibility the ALJ should consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the treatment was without justifiable excuse." *Thompson*, 987 F.2d at 1490. Mr. Anderson testified that even with medication he would have at a five out of ten pain level, which may still prove debilitating. (Tr. 33.) The record reflects that Mr. Anderson has not had a prescription for pain medication since June 2010, and that his inability to pay prevented him from receiving medication prior to that date. (Tr. 65–66, 490.) An inability to pay for medical treatment provides a justifiable excuse for not pursuing medical treatment. *See Thompson,* 987 F.2d at 1489–90; *Baker,* 886 F.2d at 292.

The Court notes that with remand and additional evidence the ALJ may change his credibility determination. On remand, the ALJ should make sure to evaluate Mr. Anderson's justification for failing to take medication.

### III. Step Five Burden

Mr. Anderson further contends that the ALJ failed to meet his step five burden to identify jobs existing in significant numbers that Mr. Anderson can perform. (Pl's Opening Br. 14, 16, ECF No. 14.) To the extent that this complaint addresses the Vocational Expert's modification of a sit/stand option, this Court disagrees.

At the hearing, the Vocational Expert (hereinafter "VE") testified as to several jobs that fit within the ALJ's hypotheticals. (Tr. 69–74.) The ALJ specifically included a sit/stand modification in the hypotheticals. (Tr. 69.) The VE referenced the DOT descriptions of the jobs provided in response to the ALJ's hypotheticals but as the DOT does not provide a sit/stand option the VE relied on his experience as a vocational rehabilitation counselor to adjust the numbers. (Tr. 73–74.) The ALJ did not err in relying on the VE's opinion in concluding that the sit/stand option did not conflict with the DOT.

The Tenth Circuit does not require Mr. Anderson to cross-examine the VE, because the ALJ bears the burden to develop this testimony. *See Haddock v. Apfel*, 196 F.3d 1084, 1090–91 (10th Cir. 1999). A VE may testify on the basis of his or her professional experience. *See Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009). The omission of the word "professional" from the VE's statement that he based the modifications on past experience as a vocational expert does not call the credibility of this statement into question.

Additionally, the DOT does not discuss sit/stand options. Thus, many courts have held that a sit/stand option does not conflict with the DOT. *See, e.g.*, *Zblewski v. Astrue*, 302 F.

App'x 488, 494 (7th Cir. 2008) ("Because the *DOT* does not address the subject of sit/stand options, it is not apparent that [testimony based on a sit/stand restriction] conflicts with the *DOT*."); Stevens v. Colvin, No. 5:12CV1105, 2013 WL 1747728, at *9 (N.D. Ohio Apr. 23, 2013) (noting "courts throughout [the Sixth C]ircuit have repeatedly found that while the DOT does not explicitly refer to the sit/stand option, a vocational expert's opinion regarding such an option does not contradict the DOT" and citing cases); Conn v. Astrue, 852 F. Supp. 2d 517, 528–29 (D. Del. 2012) ("the VE's testimony and the DOT are not in conflict; the DOT simply does not address sit/stand options."). On this basis, courts have found that a vocational expert's testimony based on a sit/stand restriction does not conflict with the DOT but instead provides "more specific information than is contained in the DOT . . . ." See Seay v. Astrue, No. 3:09-CV-01044, 2011 WL 780693, at *12 (M.D. Tenn. Feb. 28, 2011) *report and recommendation adopted,* No. 3:09-CV-01044, 2011 WL 977499 (M.D. Tenn. Mar. 18, 2011).[7] This Court finds this reasoning persuasive because it accords with SSR 00-4p, which states:

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [vocational expert] . . . or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4p, 2000 WL 1898704, at *3. SSR 00-4p therefore "recognizes and allows for the possibility that a [vocational expert] might provide more specific information than is contained in the DOT." Seay, 2011 WL 780693, at *12. Accordingly, Mr. Anderson's contention that the ALJ erred in relying on the VE's expert opinion fails.

---

[7] Some courts have found a sit/stand option necessitates further inquiry under SSR 00-4p. Novak v. Comm'r of Soc. Sec. Admin., No. 9:08-2687-HFF-BM, 2009 WL 1922297, at *2 (D.S.C. June 30, 2009) (citing cases).

## **CONCLUSION**

Based on the foregoing, the Court finds a lack of substantial evidence to support the Commissioner's decision and REMANDS the Commissioner's decision in this case.

DATED this 25th day of March, 2014.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge